UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HMONG 1, a fictitious name, on behalf of herself and as representative of members of a class similarly situated claimants,<br><br>Plaintiff,<br><br>v.<br><br>LAO PEOPLE'S DEMOCRATIC REPUBLIC, *et al.*,<br><br>Defendants. | No. 2:15-cv-02349-TLN-AC<br><br>**ORDER DENYING PLAINTIFFS' MOTION TO AMEND AND DISCHARGING THE COURT'S ORDER TO SHOW CAUSE** |

This matter is before the Court pursuant to Plaintiffs' Motion to Amend (ECF No. 41) and the Court's Order to Show Cause why this case should not be dismissed for lack of federal jurisdiction (ECF No. 40). For reasons detailed below, the Court hereby DENIES Plaintiffs' Motion to Amend (ECF No. 41) and DISCHARGES the Order to Show Cause (ECF No. 40).

**I.   FACTUAL AND PROCEDURAL BACKGROUND**

Hmong I ("Plaintiff"), a fictitiously named person, was the only individual plaintiff in the initial complaint which she brought on behalf of herself and as representative of class members. (ECF No. 1 at 1; ECF No. 43-1 ¶ 6.) The proposed amended complaint lists five named plaintiffs, Hmong I, Hmong 2, Hmong 3, Hmong 4, and Hmong 5 (collectively "Plaintiffs"), who seek to represent the class. (ECF No. 43-1 ¶¶ 6–10 & 15.) The Court will refer to "Plaintiff" in reference to the initial complaint and "Plaintiffs" in reference to the proposed amended

1

complaint.

A. <u>Procedural History</u>

In the initial complaint, Plaintiff sought injunctive relief and damages for herself and class members under 28 U.S.C. § 1350, the Alien Tort Claims Act or Alien Tort Statute ("ATS"), for "atrocities" Plaintiff alleges Defendants[1] committed. (ECF No. 1 ¶¶ 5, 7.) Defendants have not responded to this suit and may not have been properly served. (ECF No. 34 at 4.) Plaintiff moved for a default judgment. (ECF No. 5.) Following oral arguments, the magistrate judge issued amended findings and recommendations, to which Plaintiff objected, and which the undersigned adopted in full. (ECF Nos. 34, 39, & 40.)

The Court found Plaintiff had not alleged sufficient facts connected to the United States to justify jurisdiction of a United States court over this matter. (ECF No. 34 at 10.) Plaintiff argued the Court had jurisdiction under the ATS based on Defendants' alleged violations of international laws and treaties. (ECF No. 34 at 3.) The Court found Plaintiff based her claims on alleged actions by Defendants entirely within the national borders of Laos. (ECF No. 34 at 8.) The Court denied Plaintiff's motion for default judgment and ordered Plaintiff to show cause why this case should not be dismissed for lack of federal jurisdiction. (ECF No. 40 at 2.) Plaintiff moved for leave to amend, but the Court declined to rule until Plaintiff responded to the order to show cause. (ECF No. 45.) Plaintiff timely filed her Response to the Order to Show Cause. (ECF No. 46.)

B. <u>Factual Allegations</u>[2]

Plaintiffs allege Defendants committed atrocities in Laos against the class members, including "rape, mutilation, torture, disembowelments, poisoning, poisoning of the jungle and environments [including poisoning of the water systems and food systems]." (ECF No. 43-1 ¶

---

[1] Defendants are Lao People's Democratic Republic ("Laos"); Choummaly Sayasone, the President of Laos; Thongsing Thammavong, the Prime Minister of Laos; Dr. Bounkert Sangsomsack, the Minister of Justice of Laos; Lieutenant General Sengnuan Xayalath, the Minister of Defense of Laos; and Thongbanh Sengaphone, the Minister of Public Security of Laos, and Lao General Bounchanh (collectively "Defendants"). (ECF No. 1 at 1.) The Court does not know whether Defendants still hold the job titles listed. It does not affect the analysis of this matter.

[2] These factual allegations are taken from Plaintiffs' proposed amended complaint (ECF No. 43-1). *See Comm. to Protect our Agric. Water v. Occidental Oil & Gas Corp.*, 235 F. Supp. 3d 1132, *32 (E.D. Cal. 2017) (explaining Local Rule 220 requires an amended complaint be complete without reference to a prior pleading, because once an amended complaint is filed the original pleading no longer serves a function in the case).

11.) Plaintiffs allege they "suffered continuous hunting and killing as part and parcel of the official campaign against the Hmong; and have been forced to live in the jungle under those circumstances for decades." (ECF No. 43-1 ¶ 11.) Plaintiffs allege Defendants' actions, led by the Ministry of Defense of Laos, are "part of an official policy making it lawful in Laos to engage in such a murderous campaign [against Plaintiffs]."[3] (ECF No. 43-1 ¶ 12.)

Plaintiffs do not make clear when all of these actions occurred, except that they occurred sometime during and after the Vietnam War up to the recent past. (ECF No. 43-1 ¶¶ 14, 131, & 132.) For example, Plaintiff Hmong I alleges Defendants abducted her husband in Laos less than two years before she filed this suit, but Lao General Bounchanh is being sued "due to his conduct in the Summer of 1979, when three villages were burned and over 100 Hmong women, men, and children, were killed near Nan Chia village, by his order." (ECF No. 43-1 ¶¶ 14 & 144.)

Plaintiffs allege Defendants committed these acts in retaliation for the role of some Hmong in Laos before and during the Vietnam War. (ECF No. 43-1 ¶¶ 1, 2, & 4.) Plaintiffs allege some Hmong opposed the party to which Plaintiffs allege Defendants belong, the Pathet Laos. (ECF No. 43-1 ¶ 3.) Plaintiffs allege that some Hmong worked with the United States Central Intelligence Agency ("CIA") to staff up and train a "Secret Army," that operated in Laos for ten years before the end of the Vietnam War and opposed the Pathet Laos. (ECF No. 43-1 ¶¶ 31 and 33 at 11.)[4] Plaintiffs allege that after the Vietnam War, the Pathet Laos came to power in Laos and Defendants then retaliated against their party's former opponents. (ECF No. 43-1 ¶¶ 31 at 8 & 60.) Plaintiffs allege some of the weapons Defendants used in retaliation were weapons

---

[3] Plaintiffs also allege Defendants committed acts against persons who are neither fictitiously named plaintiffs in this matter nor members of the class. (ECF No. 43-1 ¶¶ 33 and 34 at 8) (alleging the King and entire Royal family of Laos, along with the "entire National Assembly" of Laos, were placed in labor camps, worked to death, and "died a slow painful death"). It is unclear why Plaintiffs include these allegations. These persons have apparently brought their own suit in this District. *See Savang, et al. v. Lao People's Democratic Republic, et al.*, 2:16-cv-02037-VC.

Plaintiffs include a lengthy discussion about a dismissed case to which neither Plaintiffs nor Defendants were party for an unrelated claim, malicious prosecution, based on different events. (ECF No. 43-1 ¶¶ 63–80 at 17–20.) (Plaintiffs have repeated use of paragraph numbers 68–80 in ECF No. 43-1 at 18–20 and 20–24, so the Court will specify the page number when referring to the paragraphs.) Plaintiffs assert that the fact that the dismissed case for malicious prosecution and the criminal case underlying it took place in the United States with different parties, different claims, and different events, supports federal jurisdiction over this matter. (ECF No. 43-1 ¶¶ 63, 80 at 20.) Plaintiffs have not explained why this might be so nor provided any authority to support their assertion.

[4] Plaintiffs also repeated use of numbers 30–36 in numbering the paragraphs in their proposed amended complaint. (*See* ECF No. 43-1 at 7–8 and 11–12.) The content of the paragraphs is different but the numbers are repeated. The Court will specify the page on which the paragraph is printed when referring to these paragraphs.

3

the United States had given the Hmong military commanders, which the Pathet Laos required the Hmong commanders to hand over to the Pathet Laos after the war. (ECF No. 43-1 ¶¶ 23 at 6, 60.)

Plaintiffs allege "Hmong people who were not in the 'Secret Army' nor descended from a person in the Secret Army have safely resided throughout Laos. It is the Hmong that have a connection to the US Secret Army that became the target of extermination…" (ECF No. 43-1 ¶ 4.) Plaintiffs allege Hmong and Lao people living in the United States sympathetic to the plight of the Hmong in Laos "wrote a series of detailed reports to a series of Presidents of the United States, and to the United Nations in New York, requesting help." (ECF No. 43-1 ¶¶ 36–44.)

Plaintiffs allege Defendants' conduct violated international laws and treaties, including the 1973 Vientiane Ceasefire Agreement; 1962 Geneva Convention; 1966 United Nations International Covenant on Civil and Political Rights; 1948 Convention on the Prevention and Punishment of the Crime of Genocide, and the "local law" of Laos, referring to the "January 9, 1990 Decree of the President of the Lao People's Democratic Republic On the Promulgation of the Penal Law." (ECF No. 43-1 ¶¶ 21–23 at 5 & 122.)[5]

Plaintiffs seek "general and special compensatory damages, and other consequential damages, in an amount according to proof but in excess of $5 million" for each Plaintiff. (ECF No. 43-1 ¶ 139.) Plaintiffs request the Court "makes arrangements to allow [Plaintiffs] to be safeguarded from physical attacks and retaliation for filing the present lawsuit, and to transport her [sic] and her group out of danger to a protection zone in some part of Laos bordering Thailand, Burma, and China." (ECF No. 43-1 ¶ 153.) "Plaintiffs seek a similar protective order for any other Hmong claimants who come forward in this action." (ECF No. 43-1 ¶ 154.)

Plaintiffs request injunctive relief from this Court requiring, among other things, "Defendants to cease their illegal campaign of atrocities," "Laotian government officials to take affirmative steps to declare this campaign as over, and to allow the Hmong people to reside in Laos in peace," "Defendants to abide by the provisions of the series of treaties described herein," Defendants "to abide by Laotian Law," and "in particular" requiring Defendants to hold

---

[5] Additionally, Plaintiffs repeat paragraph numbers 21–23 on pages 5 and 6 of their proposed amended complaint. (*See* ECF 43-1 at 5, 6.) The content of these paragraphs is different but the numbers are repeated. When the Court refers to any of the three paragraph numbers, it will specify the page on which the paragraph is printed.

democratic elections in Laos. (ECF No. 43-1 ¶ 150.)

**II.    STANDARDS OF LAW**

Granting or denying leave to amend a complaint rests in the sound discretion of the trial court. *Swanson v. United States Forest Serv.*, 87 F.3d 339, 343 (9th Cir. 1996). Under Rule 15(a)(2), "a party may amend its pleading only with the opposing party's written consent or the court's leave," and the "court should freely give leave when justice so requires." The Ninth Circuit has considered five factors in determining whether leave to amend should be given: "(1) bad faith, (2) undue delay, (3) prejudice to the opposing party, (4) futility of amendment; and (5) whether plaintiff has previously amended his complaint." *In re Western States Wholesale Natural Gas Antitrust Litigation*, 715 F.3d 716, 738 (9th Cir. 2013) (citing *Allen v. City of Beverly Hills*, 911 F.2d 367, 373 (9th Cir. 1990)). "[T]he consideration of prejudice to the opposing party carries the greatest weight." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003).

When a plaintiff cannot cure the flaw in its pleading, any amendment would be futile, and "there is no need to prolong the litigation by permitting further amendment." *Chaset v. Fleer/Skybox Int'l, LP*, 300 F.3d 1083, 1088 (9th Cir. 2002) (holding the district court did not abuse its discretion in denying leave to amend where the plaintiffs could not demonstrate standing and, therefore, amendment would be futile). Although a district court should freely give leave to amend when justice so requires, "the court's discretion to deny such leave is 'particularly broad' where the plaintiff has previously amended its complaint[.]" *Ecological Rights Found. v. Pac. Gas & Elec. Co.*, 713 F.3d 502, 520 (9th Cir. 2013) (quoting *Miller v. Yokohama Tire Corp.*, 358 F.3d 616, 622 (9th Cir. 2004)).

**III.    ANALYSIS**

"The ATS provides, in full, that '[t]he district courts shall have original jurisdiction of any civil action by an alien for a tort only, committed in violation of the law of nations or a treaty of the United States.'" *Kiobel v. Royal Dutch Petroleum Co.*, 569 U.S. 108, 133 S. Ct. 1659, 1663 (2013) (quoting 28 U.S.C. § 1350). The ATS "provides district courts with jurisdiction to hear certain claims, but does not expressly provide any causes of action." *Id*. "It does not directly

regulate conduct or afford relief." *Id*. at 1664. Under the ATS, federal courts may recognize private claims under federal common law for violations of international law, "where the claims touch and concern the territory of the United States," *id*. at 1663, "with sufficient force to displace the presumption against extraterritorial application." *Id*. at 1669.

The presumption against extraterritorial application provides that when a statute such as the ATS "gives no clear indication of an extraterritorial application, it has none.'" *Kiobel*, 133 S. Ct. 1659 at 1664 (quoting *Morrison v. National Australia Bank Ltd.,* 561 U.S. 247, 255 (2010)). It presumes "that United States law governs domestically but does not rule the world.'" *Id*. (citing *Microsoft Corp. v. AT & T Corp.,* 550 U.S. 437, 454 (2007)).

"The principles underlying the presumption against extraterritoriality [] constrain courts exercising their power under the ATS." *Kiobel*, 133 S. Ct. 1659 at 1665. The presumption helps ensure "the Judiciary does not erroneously adopt an interpretation of U.S. law that carries foreign policy consequences not clearly intended by the political branches." *Id*. at 1664. "[O]ther nations, also applying the law of nations, could hale our citizens into their courts for alleged violations of the law of nations occurring in the United States, or anywhere else in the world." *Id*. at 1669. "These concerns…are all the more pressing when the question is whether a cause of action under the ATS reaches conduct within the territory of another sovereign." *Id*. at 1665.

Plaintiffs argue this Court has jurisdiction over this matter because Plaintiffs' connection with the United States touches and concerns the United States sufficient to displace the presumption against extraterritoriality that applies to the ATS. (ECF No. 43-1 ¶¶ 21 at 6, 35 at 8.) It is the claims, however, that must "touch and concern the territory of the United States." *Kiobel*, 133 S. Ct. 1659 at 1669. Plaintiffs allege events that took place in both Laos and the United States. However, Plaintiff alleges the events giving rise to Plaintiffs' causes of actions took place entirely in Laos. "[I]f all the relevant conduct occurred abroad, that is simply the end of the matter under *Kiobel*." *Mujica v. AirScan Inc.*, 771 F.3d 580, 594 (9th Cir. 2014).

Plaintiffs define the class members as those "who have become victims to the atrocities in Lao People's Democratic Republic [hereinafter after 'Laos'] committed by the Defendants…" (ECF No. 43-1 ¶ 11) (emphasis added). By Plaintiffs' definition, the acts and events which form

the basis of Plaintiffs' claims must necessarily have taken place in Laos.

Plaintiffs also describe events which Plaintiffs allege took place within the United States, but these events do not form the basis for any of their claims. Plaintiffs allege the CIA recruited, operated, and paid for a Secret Army in Laos, had an oral agreement to assist the Hmong, and provided weapons to Hmong military commanders in the Secret Army. (ECF No. 43-1 ¶¶ 1, 23 at 6, 30 at 11, 31 at 11, 45, 49, 54, 57, 59, & 60.) Plaintiffs allege Hmong officers and Laos Royal Military were trained at Fort Knox and in Texas. (ECF No. 43-1 ¶¶ 33–34 at 11.) Plaintiffs allege some people in the United States sympathetic to their plight wrote letters to the United States government and United Nations, and others formed a committee in the United States to study and report on atrocities in Laos. (ECF No. 43-1 ¶¶ 36–40 at 12, 41–44.) None of these allegations forms the basis for Plaintiffs claims or requested relief in this matter.[6]

In several hundred pages of briefs and supporting material, Plaintiffs have not cited authority to support their assertion that Plaintiffs' contacts with the United States support this Court's jurisdiction over this case. Plaintiffs have cited three cases without explanation for how those cases would support Plaintiffs' assertions. (ECF No. 46 ¶¶ 8–11.) In fact, the cases do not lend such support.

Plaintiffs cite *Kiobel*, 569 U.S. 108, 133 S. Ct. at 1669, holding the ATS did not confer jurisdiction where all the conduct on which the claims were based took place entirely in Nigeria by the Nigerian military; *Sexual Minorities Uganda v. Lively,* 960 F. Supp. 2d 304, 323-24 (D. Mass. 2013), holding a cause of action under the ATS was appropriate where alleged torts occurred to a substantial degree in the United States, over many years, during which time the defendant was in Uganda only a few times; and *Al Shimari v. CACI Premier Tech., Inc.*, 758 F.3d 516, 530–31 (4th Cir. 2014), holding the plaintiffs' claims "touch and concern" the United States where the defendant corporation and employees on whose conduct the claims were based were United States citizens, the conduct occurred pursuant to a contract with the United States government issued in the United States, and the defendant corporation's managers in the United

---

[6] Hmong, 2, Hmong 3, Hmong 4, and Hmong, 5 have a suit pending in this Court based on many of these allegations which names the United States and the CIA as defendants. (*See* ECF No. 2:17-cv-00927-TLN-AC.)

States approved and attempted to cover up the conduct. The facts here are analogous to *Kiobel*, where the plaintiffs based their claims on alleged conduct that occurred outside the United States.

Ninth Circuit precedent does not support Plaintiffs' assertion. *Mujica*, 771 F.3d at 596, holding the plaintiffs, citizens and residents of Columbia, did not have a valid ATS claim against two U.S.-headquartered corporations where the plaintiffs' claims exclusively concerned conduct that occurred in Colombia; *Doe I v. Nestle USA, Inc.*, 766 F.3d 1013 (9th Cir. 2014), holding former child slaves had not stated an ATS claim for abuses suffered at the hands of overseers on cocoa plantations in the Ivory Coast, and adding that the Supreme Court did not explain the nature of its "touch and concern" test for determining when an ATS claim is permissible, except that "it is not met when an ATS plaintiff asserts a cause of action against a foreign corporation based solely on foreign conduct." *Id*. at 1027–28.

The Court will not grant Plaintiffs leave to amend their complaint because amendment would be futile. Plaintiffs have not shown this Court has jurisdiction over their complaint, though they have had multiple opportunities to do so. The Court has reviewed and evaluated the initial complaint (ECF No. 1), the motion to amend (ECF No. 41) and proposed amended complaint (ECF No. 43-1), as well as Plaintiffs' response to the Court's order to show cause (ECF No. 46). Plaintiffs' motion to amend, proposed amended complaint, and response to the Court's order to show cause, were all filed after the magistrate judge issued findings and recommendations (ECF No. 39) detailing the deficiencies in Plaintiff's initial complaint. Yet Plaintiffs have not corrected those deficiencies sufficient to show that this Court has jurisdiction.

The Court finds Plaintiffs cannot demonstrate federal jurisdiction and further attempts to amend would be futile. *Chaset*, 300 F.3d at 1088. Plaintiffs' motion to amend is denied.

### IV. CONCLUSION

For the reasons stated above, IT IS HEREBY ORDERED that:

1. Plaintiffs' Motion to Amend (ECF No. 41.) is DENIED, with prejudice;
2. The Court's Order to Show Cause (ECF No. 40), is DISCHARGED; and
3. The Clerk of the Court is directed to close this case.

IT IS SO ORDERED.

Dated: August 17, 2017

Troy L. Nunley
United States District Judge